IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 31 2013 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NATIONAL LABOR RELATIONS BOARD,

                  Petitioner,

-against-

KADOURI INTERNATIONAL FOODS, INC,
and HK MARKETING CORP.,

                  Respondents,
-and-

JP MORGAN CHASE BANK, N.A.,

                  Garnishee,
-and-

STAR SNACKS CO., LLC,

                  Garnishee.
----------------------------------------------------------X

REPORT AND
RECOMMENDATION

13 MC 251 (MKB)(RML)

LEVY, United States Magistrate Judge:

        The National Labor Relations Board ("petitioner" or "Board") moves, ex parte, pursuant to the Federal Debt Collection Procedure Act of 1990 ("FDCPA"), 28 U.S.C. §§ 3001–3308, for issuance of a prejudgment writ of garnishment against the property of respondent Kadouri International Foods, Inc. ("Kadouri") and respondent HK Marketing Corp. ("HK Marketing"). By order dated March 27, 2013, the Honorable Margo K. Brodie, United States District Judge, referred petitioner's motion to me for a report and recommendation. (Order, dated Mar. 27, 2013.) For the reasons stated below, I respectfully recommend that petitioner's motion for a prejudgment writ of garnishment be granted.

## BACKGROUND AND FACTS

        On April 29, 2011, the Board issued a decision and order, adopting the December 15, 2010 decision and recommended order of Administrative Law Judge Eleanor MacDonald,

which found that Kadouri had committed unfair labor practices in violation of Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169, by closing its Brooklyn facility in July 2010 without affording its union the opportunity to bargain with respect to the effects of Kadouri's decision to close the facility. Kadouri Int'l Foods, Inc. & United Food & Commercial Workers, Local 342, 356 N.L.R.B. 148 (2011) (the "Board's order"). The Board's order directed Kadouri to bargain with the union and pay backpay, with interest, to employees affected by the closure. On July 1, 2011, Kadouri entered into a stipulated agreement with the Board, waiving its right to contest the Board's order, and reserving its right to a hearing to determine the amount of money owed to the employees. (Stipulation, dated July 1, 2011, annexed as Ex. C to Declaration of RyAnn McKay Hooper, Esq. ("Hooper Decl."), filed Mar. 22, 2013.) On August 23, 2011, the Board presented a written demand to Kadouri, requesting the unpaid backpay owed to the affected employees. (Demand Letter, dated Aug. 23, 2011, annexed to the Hooper Decl. as Ex. D.) The Board claims that Kadouri's debt includes $15,927 in unpaid backpay; $1391 in accrued interest; and a ten percent surcharge of $1731.80, see 28 U.S.C. § 3011(a), for a total sum of $19,049.80. (Letter from RyAnn McKay Hooper Clarifying Garnishment Request, dated May 28, 2013.)

On June 8, 2011, Kadouri's attorney sent an email to the Board stating that Kadouri did not possess any assets and had no means of paying the backpay award. (Email from Paul Galligan, Esq. to Nicholas Helsick, dated June 8, 2011, annexed to the Hooper Decl. as Ex. K.) At a deposition conducted on November 20, 2012, Ayal Kadouri, one of the two shareholders of Kadouri and HK Marketing, stated that he was unable to pay the debt owed to the Board. (Transcript of Deposition of Ayal Kadouri ("Ayal Kadouri Dep."), dated Nov. 20, 2012, at 149:2-25, annexed to the Hooper Decl. as Ex. E.)

Subsequently, the Board began an investigation to determine whether other corporate entities or individuals may have derivative liability for the backpay amount owed by Kadouri. The Board asserts that the investigation revealed that Ayal Kadouri and Danny Kadouri, the brothers who own Kadouri, did not close its operations, but rather continued to operate at a different location, and in November 2010, began to operate under the name HK Marketing Corp. (Hooper Decl. ¶ 8.) The Board alleges that HK Marketing was an "alter ego" created to take Kadouri's place and avoid its payment obligations and is jointly and severally liable under the Board's order.[1] (Id. ¶¶ 34-35.)

HK Marketing, like Kadouri, is engaged in the business of wholesale distribution of specialty food products. (Sales & Purchase Agreement between Kadouri and A.L. Bazzini Co., signed Apr. 25, 2010, annexed to the Hooper Decl. as Ex. G, at 1.) HK Marketing was incorporated on November 2, 2010, approximately one month after the Board issued a complaint alleging that Kadouri had unlawfully closed its Brooklyn facility. (Certificate of Incorporation, HK Marketing Corp., dated Nov. 2, 2010, annexed to the Hooper Decl. as Ex. J.) The evidence submitted by the Board indicates that HK Marketing and Kadouri are jointly owned by Ayal and Danny Kadouri, and share many of the same employees, operations, and equipment. (Id. at 9:2-10:1; 51:5-52:14; 59:11-18; 60:8-21; 115:8-14.) Kadouri continues to maintain a website, and the telephone number listed on that website dials to the desk of HK Marketing in New Jersey. (Ayal Kadouri Dep. at 16:1-18:25; Transcript of Deposition of Danny Kadouri, dated Nov. 19, 2012, annexed to the Hooper Decl. as Ex. I, at 17:15-25.) Additionally, HK Marketing uses the

---

[1] According to the Board's memorandum in support of its motion, a hearing was scheduled for April 15, 2013 before an administrative law judge to determine the derivative liability of HK Marketing and Ayal Kadouri for this potential liquidated judgment. (Memorandum in Support of Ex Parte Application for Prejudgment Writ of Garnishment ("Mem. in Support"), dated Mar. 22, 2013, at 1). The court is aware of no subsequent developments regarding the administrative hearing as of the date of this report and recommendation.

Kadouri customer list and provides goods to former Kadouri customers as part of its current sales arrangement with Star Snacks Co., LLC. (Ayal Kadouri Dep. at 56:2-58:3; 121:17-24.) At his deposition, Ayal Kadouri stated, "[W]e owed a lot of money under Kadouri International Foods, therefore a lot of judgments came. Even you guys [the Board] and we couldn't operate so we opened a new company and we continued doing what we -- the sales that we did." (Id. at 64:9-13.)

The Board alleges that any income received by either Kadouri or HK Marketing is at risk of being assigned, disposed of, concealed, ill-treated, wasted, or destroyed, instead of being used to satisfy the backpay award. (Memorandum in Support of Ex Parte Application for Prejudgment Writ of Garnishment ("Mem. in Support"), dated Mar. 22, 2013, at 1-2, 7.) The Board asserts that Kadouri closed its bank account in December 2010 and re-redirected funds that it was owed under a sales agreement with another company, A.L. Bazzini Co., Inc., to a new bank account established on behalf of HK Marketing in an attempt to avoid the effects of lawsuits and judgments against Kadouri. (Id. at 7.) The Board also states that HK Marketing's bank statements reveal that "Ayal Kadouri regularly transfers large sums of money to personal accounts of his own and family members." (Id. See also Ayal Kadouri Dep. at 68:12-22; 123:21-25.) As a result, the Board believes that the dissipation of Kadouri's assets and funds will continue if a prejudgment writ of garnishment is not granted. (Mem. in Support at 7-8. )

## DISCUSSION

"The FDCPA allows the United States to recover a judgment on a debt owed to it or to obtain a remedy in connection with such a claim before judgment on the debt." N.L.R.B. v. E.D.P. Med. Computer Sys., Inc., 6 F.3d 951, 954 (2d Cir. 1993) (citing 28 U.S.C. § 3001 (a)). The Board is considered a representative of the United States under the FDCPA, and use of the

FDCPA is appropriate where, as here, the debt owed to the United States is a backpay award granted in an order pursuant to the NLRA. See id. at 954.

The FDCPA allows for prejudgment remedies only in "compelling circumstances." Id. at 956 (internal citation and quotation marks omitted). To obtain a prejudgment remedy, "the United States must show there is reasonable cause to believe the debtor is about to prevent the United States from recovering its debt by fleeing the jurisdiction, disposing of assets, or evading service of process." Id. (citing 28 U.S.C. § 3101(b)). When this burden is met, a court may issue a prejudgment writ of garnishment against property in which the debtor has a substantial nonexempt interest in order to satisfy a claim for the debt. See 28 U.S.C. § 3104(a).

I find that the Board has satisfied its burden and has established that a factual basis exists which justifies the need for a prejudgment remedy. In its ex parte application, the Board states that there is reasonable cause to believe that respondents will seek to avoid the backpay obligation to the Board, and that its collection efforts against Kadouri are significantly at risk without a prejudgment remedy. (Mem. in Support at 7-8.) The Board alleges that HK Marketing was created in order to avoid Kadouri's obligations, and took over Kadouri's business without any significant interruption or change in business operations. The Board has provided specific proof, as described above, and completed the application with a declaration to the same effect. I conclude that the Board has established the need for a remedy under the FDCPA and has offered sufficient evidence to justify issuance of a prejudgment writ of garnishment.[2]

---

[2] The FDCPA mandates that, upon issuance of a writ of garnishment, notice be given to the respondents and garnishees, and a hearing be held if requested. 28 U.S.C. § 3101(d)(1).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that petitioner's motion for a prejudgment writ of garnishment be granted, and that the Court issue a prejudgment writ of garnishment to the identified garnishees, in an amount not to exceed $19,049.80. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Brodie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1)(C) (2009); FED. R. CIV. P. 72, 6(a), (e).

Respectfully submitted,

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
May 31, 2013